UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
United States of America,                          :
                                                   :
                         *Plaintiff*,              :
         v.                                        :    [22 Cr. 019 (PGG)]
                                                   :
Bradley Pierre, *et al.*,                          :
                                                   :
                         *Defendants*.             :
------------------------------------------------------------- X

**DEFENDANT DR. WEINER'S TRIAL BRIEF ON POTENTIAL DUE PROCESS ISSUES AND ORDER OF PROOF**

Dr. Weiner submits this memorandum to raise in advance of trial two legal issues that may prove to be significant to the trial and adjudication of this case.

I. **The Government's Fraudulent Incorporation Theory Implicates Due Process and Rule of Lenity Concerns**.

Although the Second Superseding Indictment does not specify, the Government has represented that the healthcare fraud allegations are based, at least in part, on a fraudulent incorporation theory under *State Farm Auto Ins. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758 (N.Y. Ct. App. 2005) and its progeny. As Dr. Weiner understands it, the Government will seek to prove that Bradley Pierre, and not Dr. Weiner, was the true "owner" of Dr. Weiner's practice.

Dr. Weiner denies this contention. He believes that the evidence will show that he exercised decision-making authority and control over the operation and management of every material aspect of his practice and that, as a result, there is no room for doubt that he was the owner of his practice. Nevertheless, Dr. Weiner submits this memorandum to call to the Court's attention that the law around what constitutes "ownership" is ambiguous. As such, once the evidence is in, the Court

may need to consider whether due process and the rule of lenity would preclude a conviction under this theory.

    A.    **The Rule of Lenity and Due Process**

"Due process requires that a criminal statute 'give fair warning of the conduct that [the statute] makes a crime.'" *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 350–51 (1964)). In addition, "'due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.'" *United States v. DeFilippo*, -- F. Supp. 3d --, 2023 WL 5000385, at *6 (D. Conn. Aug. 4, 2023) (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)). Where conduct does not clearly violate a criminal statute, courts must apply the rule of lenity, and resolve any "ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id.*

    B.    **Courts Have Recognized that "Ownership" Under *Mallela* is Ambiguous and Have Found Violations of *Mallela* Only When the Lack of Ownership is Obvious on the Particular Facts of the Case.**

*Mallela* and its progeny recognize that a finder of fact may look past the corporate paperwork and examine multiple factors, including "the realities of actual control of the [medical practice]," to determine whether the paper "owner" exercised the type of control, authority, and supervision (with the attendant "economic risks and benefits") that one would expect the owner of a professional corporation to exercise. *See, e.g.*, *United States v. Gabinskaya*, 829 F.3d 127, 133 (2d Cir. 2016) (discussing *Mallela*).[1]

---

[1] In an effort to make this comprehensible to a jury, a state trial court fashioned a test with *thirteen* factors for them to consider in a civil case. *See Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 42 Misc. 3d 30, 37, 979 N.Y.S.2d 439, 443 (App. Term 2013), *aff'd*, 150 A.D.3d 192, 51 N.Y.S.3d 551 (2017), *aff'd*, 33 N.Y.3d 389, 128 N.E.3d 153 (2019).

What this multi-factor test means in practice is unclear. Multi-factor tests "suppl[y] notoriously little guidance" to regulated parties. *Wooden v. United States,* -- U.S. --, 142 S.Ct. 1063, 1080 (2022) (Gorsuch, J., concurring). And they are even less useful when, as here, it is unclear which of the various factors should be considered more important. This uncertainty led Judge Oetken to note that the "nature of what ownership is under" *Mallela* is "ambiguous" and "inherently fuzz[y]." *United States v. Gabinskaya*, Case No. 1:12-cr-00171, ECF No. 1603 at 28 (S.D.N.Y. Apr. 6, 2015) (sentencing hearing conducted by Judge Oetken) (excerpt attached as **Exhibit A**). In fact, Judge Oetken referenced this ambiguity repeatedly, even calling "ownership" under *Mallela* a "fluid concept." *United States v. Gabinskaya*, 2015 WL 845716, at *2 (S.D.N.Y. Feb. 26, 2015).

The courts have not yet found cause to invoke the rule of lenity in a fraudulent incorporation case because the facts alleged or proved in the reported cases have not been close. For example, in *Mallela*, the allegations of the complaint (which, of course, the Court accepted as true) were:

> [T]he unlicensed defendants paid physicians to use their names on paperwork filed with the State to establish medical service corporations. Once the medical service corporations were established under the facially valid cover of the nominal physician-owners, the nonphysicians actually operated the companies. To maintain the appearance that the physicians owned the entities, the nonphysicians caused the corporations to hire management companies (owned by the nonphysicians), which billed the medical corporations inflated rates for routine services. In this manner, the actual profits did not go to the nominal owners but were channeled to the nonphysicians who owned the management companies.

*Mallela*, 4 N.Y.3d at 319-20.

Similarly, in *Carothers*, the trial evidence showed that the physician: (i) did not exercise any personal oversight over the medical practice, (ii) did not control the company's bank accounts, (iii) did not personally guarantee the leases, (iv) paid exorbitant sums to the non-physician "owner"

3

for medical equipment, (v) was paid less than the office assistant hired by the non-physician, (vi) conducted only 79 of the 38,000 scans performed by the office, and (vii) "was not involved in evaluating or disciplining employees." *See Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 33 N.Y.3d 389, 395-96, 128 N.E.3d 153, 15 (N.Y. Ct. App. 2019).[2]

The federal cases addressing this issue also involved egregious facts. In *Allstate v. Lyons*, the insurance company alleged (and the court accepted as true) that the defendant physician: (i) had *admitted* that he was an absentee owner, (ii) could not identify the clinic's landlord, (iii) did not know the type of equipment used at the clinic, (iv) did not hire the clinic's management company, (v) allowed his name to be signed by the management company, (vi) did not invest any money in the clinic, (vii) could not identify any lawyers or law firms engaged to pursue collections on the clinic's behalf, and (viii) could not identify the clinic's accountants. 843 F. Supp. 2d 358, 371-72 (E.D.N.Y. 2012) (emphasis added). On these facts, the court noted "it [was] easy to find that Allstate had adequately pled fraudulent incorporation." *Id.* at 371.

Finally, in *Gabinskaya* (the leading criminal case in this District), the evidence also clearly showed a *Mallela* violation. *Gabinskaya*, 2015 WL 845716, at *2. Specifically, the Government presented evidence showing that the defendant physician: (i) did not see patients at the clinic, (ii) rarely visited the clinic, and (iii) could not point to a patient that had met and been treated by her. The Government also offered testimony from multiple clinic employees, "who together covered all of Clearview's operating hours," "that they did not know Gabinskaya had any management role" in the practice. *Id.* And the evidence showed that the "real" owners of the practice "procured Gabinskaya's involvement in the scheme in exchange for $1,500 per week." *Id.* at *3. Thus, while

---

[2] *Carothers* is the other major *Mallela* case decided by the New York Court of Appeals. The Court of Appeals did not issue its decision in *Carothers* until 2019, several years after the beginning of the alleged conspiracy in this case.

Judge Oetken acknowledged the ambiguity inherent in the legal definition of "ownership," the Government's evidence at trial was sufficient to show the defendant's clear lack of ownership under *Mallela*.[3] Judge Oetken thus had no cause to invoke the rule of lenity.

> C. **If the Evidence Does Not Show Circumstances Substantially Similar to Previously Adjudicated *Mallela* Violations, the Rule of Lenity and Due Process Require that the Fraudulent Incorporation Theory May Not Be Submitted to the Jury.**

To be clear, Dr. Weiner is not rearguing this Court's decision on his Motion to Dismiss. Rather, Dr. Weiner is alerting the Court to a different issue with significant constitutional implications. If the Government submits evidence of lack of ownership clearly similar to the facts of the above cases, there is no rule of lenity or due process issue caused by a lack of fair warning. But, if the facts fall short of the cases above, leading to some ambiguity about whether there is a *Mallela* violation here, the theory of fraudulent incorporation cannot go to the jury. The cases described above constitute the sole notice to physicians of what is and is not "ownership" under *Mallela*. There has been no other statutory or judicial guidance to inform Dr. Weiner about where the line is between what is permissible and what is not under New York law. Consequently, Dr. Weiner would have had fair warning of the potential criminality of his conduct *only* if it rose to the level of the misconduct described above. If the evidence at trial does not unambiguously equate to these cases, the rule of lenity requires that the ambiguity be resolved in Dr. Weiner's favor and the theory cannot go to the jury to decide. If the Court allows even a debatable *Mallela* violation to be considered by the jury, the Court would be improperly allowing the jury "to apply a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision

---

[3] The Second Circuit affirmed the sufficiency of the evidence offered against Gabinskaya, stating the evidence showed she "did not exercise any control over its operations, or participate in its business or medical decisions." *Gabinskaya*, 829 F.3d at 132. The defendant's challenge to the jury instruction was extremely narrow – arguing only that district court should have instructed the jury to consider only the "formal indicia of ownership" (i.e., the papers of incorporation) in deciding fraudulent incorporation. *Id.* at 134.

has fairly disclosed to be within its scope." *DeFilippo*, 2023 WL 5000385, at *6. This would violate due process of law.

The instant memorandum is meant to apprise the Court of a significant constitutional issue Dr. Weiner believes may arise in this case. If the Government does not present evidence showing conduct substantially equivalent to the conduct in the cases discussed above by the close of its case, the theory of fraudulent incorporation cannot go to the jury.

## II. Hearsay Statements by Dr. Weiner's Alleged Co-Conspirators Should Be Excluded Unless the Government First Establishes the Necessary Factual Predicate To Establish Their Admissibility.

"Extra-judicial statements by co-conspirators may be admitted if the government establishes by a preponderance of the evidence that there was a conspiracy, that both the declarant and the party against whom the statements are offered were members of the conspiracy, and that the statements were made during and in furtherance of the conspiracy." *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996). But the Second Circuit has cautioned that these hearsay statements are "presumptively unreliable," and thus are admissible only upon "some independent corroborating evidence of the defendant's participation in the conspiracy." *Id.*

Oftentimes, the Government is permitted to offer the hearsay statements before it introduces independent corroborating evidence of the defendant's participation, so long as it "links up" the co-conspirator statements with sufficient evidence by the end of trial. *See United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969) (such evidence may be conditionally admitted "subject to connection"). This procedure can and should be abandoned, however, where the evidence linking the statements to the defendant is limited and the statements themselves are dramatic (and thus not likely to be disregarded even upon an instruction from the Court). *See United States v. Saneaux*, 365 F. Supp. 2d 493, 504 (S.D.N.Y. 2005).

6

It is Dr. Weiner's understanding that many of the statements made by Moy to Bradley Pierre may be salacious, inflammatory, and highly incriminating as to Moy and Pierre, but not to Dr. Weiner. Thus, allowing the Government to follow *Geaney* and introduce these statements before the appropriate factual predicate is established, or, admitting them conditionally upon the Government's ability to "link up" the statements with later introduced evidence would be highly prejudicial to Dr. Weiner. Once these statements are heard by the jury, the jurors are unlikely to be able to disentangle proof of a conspiracy involving Moy (who will not be present) and Pierre with a conspiracy that also involves Weiner (a key fact that the Government must prove as to Weiner individually). This may require the Government "to alter its preferred order of proof," but this procedure precludes this Court from "having to choose between instructing the jury to forget rather dramatic statements" or "declare a mistrial" should the Government fail to establish later that the statements were made in furtherance of the conspiracy. *Saneaux*, 365 F. Supp. 2d at 504. Consequently, the Government should be prohibited from referring or introducing to the jury any statements by Moy, Pierre, or any other alleged co-conspirator not involving Dr. Weiner until it has introduced sufficient evidence, other than the statements, establishing the predicate conditions for admissibility of co-conspirator statements under Fed. R. Evid. 801(d)(2)(E) for each proffered statement.

Dated:  December 15, 2023                                  Respectfully Submitted,

                                                    **MAYER BROWN LLP**

                                                    By:  /s/ Kelly B. Kramer
                                                           Kelly B. Kramer, Esq.
                                                           William Sinnott, Esq. (*pro hac vice*)
                                                           1999 K Street NW
                                                           Washington, DC 20006-1101
                                                           (202) 263-3007
                                                           kkramer@mayerbrown.com

**RICHARD BEN-VENISTE PLLC**

Richard Ben-Veniste, Esq.
4315 50th Street NW
Suite 100, Unit 2636
Washington, D.C. 20016
(202) 631-1901
rbvlaw@yahoo.com

*Counsel for Doctor William Weiner*