UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>WILLIAM WEINER,<br><span style="padding-left:6em">Defendant.</span> | **<u>ORDER</u>**<br><br>22 Cr. 19 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

On January 16, 2024, Defendant William Weiner pled guilty to conspiracy to commit healthcare fraud and tax fraud in violation of 18 U.S.C. § 371.  (Jan. 16, 2024 Plea Tr. (Dkt. No. 385))  On September 19, 2024, this Court sentenced Weiner to time-served and two years' supervised release, but deferred its determination as to restitution.  (Sept. 19, 2024 Sent. Tr. (Dkt. No. 478) at 35)  The Government now seeks an order directing Weiner to make restitution to (1) Farmers Insurance Exchange in the amount of $334,612.22 (Sept. 30, 2024 Govt. Ltr. (Dkt. No. 475) at 1-2); and (2) the Internal Revenue Service ("IRS") in the amount of $76,127.00.  (Dec. 13, 2024 Joint Ltr. (Dkt. No. 507) at 1)

Weiner is a radiologist who operated Nexray Medical Imaging, PC ("Nexray"), an MRI facility.  For much of this case, the Government contended that Dr. Weiner had committed healthcare fraud by covering up the fact that his clinic was owned and controlled by co-defendant Bradley Pierre, who is not a physician.  (Sept. 30, 2024 Govt. Ltr. (Dkt. No. 475) at 1)  Under New York law, insurance companies may deny reimbursement claims submitted by medical clinics that are controlled by non-physicians.  See State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320-21 (2005).  The restitution order of $334,612.22 that the Government seeks is in connection with reimbursements Farmers Insurance Exchange paid to Nexray.  (Sept. 30, 2024 Farmers Ltr. (Dkt. No. 475-1) at 1-3)

For the reasons stated below, this Court will enter an order directing Weiner to make restitution to the IRS in the amount of $76,127. The Court will not award restitution as to Farmers Insurance Exchange.

## BACKGROUND

### I.    INDICTMENT AND GUILTY PLEA

Weiner is charged in United States v. Pierre et al., 22 Cr. 20 (PGG), a large multi-defendant case premised on a $70 million no-fault insurance fraud scheme. The Indictment alleges that from approximately 2008 to 2021, Weiner's co-defendants procured the identity of car accident victims through bribery, steered the accident victims to corrupt no-fault medical clinics willing to pay kickbacks for the referrals, and billed insurance companies for unnecessary medical procedures and medications. The corrupt medical clinics also falsely represented to insurers that they were owned and controlled by physicians, when in fact they were not. This misrepresentation was significant because – under New York's no-fault insurance law – medical clinics under the control of non-physicians may not seek reimbursement from insurers for the care they provide, even where that care was medically necessary. (Indictment (Dkt. No. 1) ¶¶ 1-4, 6)

The Indictment alleges that Weiner was one of the "No-Fault Physicians" who "gave control of their medical practices to [non-physician and co-defendant Bradley Pierre]." (Id. ¶ 8) According to the Indictment, Pierre

> profited by steering hundreds of Patients from the [fraudulent no-fault] Clinics to Nexray, the MRI Facility under [Pierre's] control. Like the [fraudulent no-fault] Clinics, Nexray purported to be operated and controlled by a licensed physician – [William Weiner]. In practice, however, [Pierre] received the majority of Nexray's proceeds; controlled Nexray's bank accounts; influenced the hiring and firing of Nexray's employees; identified the locations for Nexray's facilities; negotiated the rent for Nexray's leases; and chose the attorneys that would represent Nexray in arbitration, litigation, and sworn depositions before insurance companies. [Pierre] further arranged for a network of no-fault doctors and

attorneys to refer patients to Nexray for medical care – oftentimes through bribery – in addition to the No-Fault Clinics under his control.

(Id. ¶ 17)

The Indictment further alleges that Pierre arranged for Weiner to

lie under oath to insurance companies to conceal the healthcare fraud scheme. Under the No-Fault Law [in New York], insurance carriers have the right to subject medical providers to Examinations under Oath ("EUOs") when they suspect that providers have submitted fraudulent claims. During the process, the physician is placed under oath and asked questions relevant to the claim at hand, including whether the medical practice is under the control of nonphysicians. [Pierre] and the No-Fault Physicians were aware that insurance companies would deny reimbursement for the No-Fault Facilities if the No-Fault Physicians testified truthfully about the medical necessity of treatments and [Pierre's] control of the Facilities. [Pierre] accordingly arranged for the No-Fault Physicians to falsely state under oath, among other things, that [Pierre] was solely a lender for the No-Fault Facilities and played no role in referring patients to the No-Fault Facilities.

(Id. ¶ 19)

On January 16, 2024, Weiner pled guilty to conspiracy to commit healthcare fraud

and tax fraud in violation of 18 U.S.C. § 371. (Jan. 16, 2024 Plea Tr. (Dkt. No. 385) at 19-23)

As part of his plea allocution, Weiner stated that

[d]uring an examination under oath in May of 2017 and during one in February 2021, I falsely minimized Bradley Pierre's role in my medical practice to facilitate the payment of claims. Separately, I understood that my filed tax returns contained false information regarding deductions.

THE COURT: Now, you said you falsely minimized Bradley Pierre's role in your medical practice, and I think you said to facilitate reimbursement of claims or language to that effect. So should I understand that these were claims made to insurance companies to obtain reimbursement for claims for medical services?

THE DEFENDANT: That's correct, sir.

THE COURT: And Mr. Weiner, with respect to the minimization of Bradley Pierre's role in your medical practice, did you agree with him to falsely minimize his role in your medical practice in order to facilitate claim reimbursement?

. . . .

THE DEFENDANT:  I had an overall understanding with Mr. Pierre but a more specific agreement with the attorney representing me during the examination under oath.

THE COURT:  And what was the role of the attorney in this?

THE DEFENDANT:  He represented me in the collection of funds from the insurance company and represented me during the examination under oath, during the – with the insurance company.

THE COURT:  All right.  So are you saying that the attorney was aware that as a result of Bradley Pierre's role in your medical practice, that it was not lawful to obtain medical reimbursement from the insurance company?

THE DEFENDANT:  That's fair to say, your Honor.

THE COURT:  Okay.  And so I want to be clear that with respect to [your] effort to obtain reimbursement from the insurance company, you understood at the time that because of Bradley Pierre's role in your medical practice, you did not have a right to obtain reimbursement for the medical claims?

THE DEFENDANT:  I understood that I had the right to make claims to the insurance company but that they would contest his role in my medical practice to deny the payments.

THE COURT:  Right.  And because of that, you did not disclose to the insurance companies Bradley Pierre's role in your medical practice?

THE DEFENDANT:  That's correct.

(Id. at 19-21)

## II.    WEINER'S SENTENCING

After Weiner's January 16, 2024 guilty plea, the parties filed sentencing submissions in May and June 2024.  Those sentencing submissions "present[ed] a number of material factual disputes concerning Dr. Weiner's conduct," and "[m]any of those factual disputes went directly to Dr. Weiner's culpability."  (Sept. 19, 2024 Sent. Tr. (Dkt. No. 478) at 3-4)  Accordingly, at a June 12, 2024 conference, this Court directed the parties to "confer about their factual disputes, and to determine whether they could be resolved short of a . . . hearing" pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979).  (Id. at 4)  In August 9, 2024

4

letters, the parties reported that no <u>Fatico</u> hearing would be necessary because they had "reached agreement concerning nearly all of the outstanding factual disputes." (<u>Id.</u> at 4) (citing Aug. 9, 2024 Govt. Ltr. (Dkt. No. 452); Aug. 9, 2024 Def. Ltr. (Dkt. No. 453))

For example, the Government had originally contended that Weiner "effectively sold his medical license to Bradley Pierre, his co-conspirator, to conceal that Pierre in fact owned and controlled the radiology practice to which Weiner lent his name." (June 4, 2024 Govt. Ltr. (Dkt. No. 427) at 1) Weiner, by contrast, said that he "owned and controlled" his radiology practice and that he made all the normal and necessary decisions in running his practice. (May 28, 2024 Def. Ltr. (Dkt. No. 418) at 4) Ultimately, the Government "decided to voluntarily forgo attempting to establish [at sentencing]" Pierre's alleged control over Weiner's radiology practice. (June 26, 2024 Govt. Ltr. (Dkt. No. 434) at 1)

Similarly, the Government had originally argued that Dr. Weiner "repeatedly perjured himself about Pierre's role in Nexray," including about whether Pierre had a role in finding patients for Nexray, whether he had assisted Weiner in reopening Nexray in 2016, whether Pierre was simply a "funder" for the clinic, and whether Pierre and Weiner had entered into a non-recourse loan agreement. (June 4, 2024 Govt. Ltr. (Dkt. No. 427) at 4, 10-11) The Government said that Dr. Weiner lied about Pierre's involvement in Nexray because he knew that it was unlawful for Nexray to obtain reimbursement from insurers, given the fact that Pierre was a non-physician who actually controlled Nexray. (<u>Id.</u> at 4, 7) Defense counsel, by contrast, argued that Dr. Weiner – in his insurance company depositions – had "minimized Mr. Pierre's role because he knew that the insurance companies would seek to use Mr. Pierre's involvement to try to deny otherwise valid claims." (May 28, 2024 Def. Ltr. (Dkt. No. 418) at 6) Ultimately, the Government stated that it would "voluntarily forgo attempting to establish" that Dr. Weiner

testified falsely about Bradley Pierre's role in his medical practice beyond what Dr. Weiner had already acknowledged – i.e., that he had "falsely minimized Bradley Pierre's role in [Weiner's] medical practice." (June 26, 2024 Govt. Ltr. (Dkt. No. 434) at 1; Jan. 16, 2024 Plea Tr. (Dkt. No. 385) at 19)

This Court noted at sentencing that "[t]he government's concessions concerning these issues, including . . . Pierre's role vis-à-vis Nexray, and Dr. Weiner's motives for minimizing Pierre's role at Nexray[,] go to the core of the case against Dr. Weiner." (Sept. 19, 2024 Sent. Tr. (Dkt. No. 478) at 5-6) In alleging that Weiner had committed healthcare fraud, the Government had – until sentencing – relied on a fraudulent incorporation theory premised on State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313 (2005). (Id. at 6)[1] But in an August 9, 2024 letter, the Government stated that it "does not contend for sentencing purposes that the defendant committed a substantive Mallela violation." (Aug. 9, 2024 Govt. Ltr. (Dkt. No. 452) at 3)

In light of this "very surprising concession," this Court

directed the parties in a September 13, 2024 order to address the implications of the government's abandonment of its Mallela[] theory of liability for purposes of sentencing. In a September 18, 2024 joint letter, the parties [asserted] that Dr. Weiner's plea allocution provides a sufficient factual basis for concluding that he conspired to commit healthcare fraud, even though the government has abandoned any attempt to prove a substantive Mallela violation. . . .

(Sept. 19, 2024 Sent. Tr. (Dkt. No. 478) at 6)

---

[1] As explained below, in Mallela, the New York Court of Appeals ruled that "fraudulently incorporated medical compan[ies]" – i.e., "companies [that] fail to meet the applicable state licensing requirements, which prohibit nonphysicians from owning or controlling medical service corporations" – are "not entitled to reimbursement" under New York's no-fault insurance law. Mallela, 4 N.Y. 3d at 320-21. Accordingly, "where a medical clinic misrepresents to an insurer that it is owned or controlled by a physician in order to obtain payment for medical services, the clinic defrauds the insurer." United States v. Pierre, No. 22 Cr. 19(PGG), 2023 WL 4493511, at *7 (S.D.N.Y. July 12, 2023).

At sentencing, the Court stated that while it would

> accept the parties' factual stipulations, as well as their sentencing guideline
> stipulations, drawing a distinction between a conspiratorial versus a substantive
> violation on the facts of this case makes absolutely no sense. Under the theory the
> government pursued for two and a half years[,] Dr. Weiner would have violated
> <u>Mallela</u>, and therefore committed a substantive healthcare fraud violation[,]
> [e]very time a claim was filed for care provided at his MRI clinic[,] because that
> clinic was controlled and operated by a nonphysician. The parties have stipulated,
> however, that Dr. Weiner had merely an unlawful agreement with Bradley Pierre
> to file claims in violation of <u>Mallela</u>, but that the object of that unlawful
> conspiracy was never actually consummated. That makes no sense under the
> facts of this case, but it is part and parcel of the erosion of the government's case
> as this prosecution has proceeded over the past two and a half years.

(Sept. 19, 2024 Sent. Tr. (Dkt. No. 478) at 6-7) (citations omitted)

This Court concluded that "the most serious allegations [against] Dr. Weiner have melted away[,] leaving only an attempt to minimize the involvement of a nonphysician in his MRI practice and a relatively small amount of tax fraud." (<u>Id.</u> at 33)

In light of that factual finding – as well as the Defendant's age of 68, his lack of a criminal record, his long history of providing appropriate medical care to patients, and his expression of remorse at sentencing – this Court sentenced Weiner to time-served and two years' supervised release, and deferred the restitution determination for thirty days. (<u>Id.</u> at 33, 35)

## III.    THE PARTIES' SUBMISSIONS CONCERNING RESTITUTION

In a September 30, 2024 letter, the Government contends that this Court should award restitution of $334,612.22 to Farmers Insurance Exchange ("Farmers") for payments Farmers-owned insurers made to Nexray. (Sept. 30, 2024 Govt. Ltr. (Dkt. No. 475) at 1-2) In support of its application, the Government submitted a September 30, 2024 letter from Farmers documenting $334,612.22 in payments Farmers entities made to Nexray. (Sept. 30, 2024 Farmers Ltr. (Dkt. No. 475-1) at 1-3)

In its September 30, 2024 letter, the Government further states that restitution of $59,396.00 should be awarded to the IRS.  The Government contends that this is the outstanding balance Defendant and Nexray owe after having filed amended tax returns.  (Sept. 30, 2024 Govt. Ltr. (Dkt. No. 475) at 2)  The Government also notes that Weiner's plea agreement provides that he "agrees to pay restitution as ordered by the Court."  (Id. at 1)

In an October 10, 2024 letter, Defendant argues that no restitution is owed to either Farmers or to the IRS.  (Oct. 10, 2024 Def. Ltr. (Dkt. No. 480) at 1)  As to Farmers, Weiner argues that because "the Government no longer contends that there was a Mallela violation that otherwise would have allowed the insurer to legally deny payment," there is no longer an appropriate basis for a restitution award to Farmers.  (Id. at 2)  As to the IRS, Weiner contends that he has "already paid" all that he owes, citing four checks dated May 31, 2024 that Weiner made payable to the United States Treasury in the amounts of $7,022, $60,715, $7,917, and $38,891.  (Id. at 3; Oct. 11, 2024 Def Ltr., Ex. A (May 31, 2024 Checks) (Dkt. No. 482-1) at 2-5)

In an October 22, 2024 reply, the Government does not respond directly to the Defendant's Mallela argument.  The Government instead cites to a letter from Mid-Century Insurance Company – one of the Farmers entities that made payments to Nexray – in which Mid-Century argues that Weiner's statements at his plea allocution provide a sufficient basis for a restitution award.  (Oct. 22, 2024 Govt. Ltr. (Dkt. No. 487); Oct. 22, 2024 Mid-Century Ltr. (Dkt. No. 487) at 4-5).

As to the proposed restitution award to the IRS, the Government states that the IRS "rejected or refunded several of the [Defendant's] checks" – including several of the checks

attached to the Defendant's October 10, 2024 letter.  (Oct. 22, 2024 Govt. Ltr. (Dkt. No. 487) at 1)

In a November 8, 2024 order, this Court directed the parties to "make a joint submission stating what Weiner's outstanding tax liability is."  (Nov. 8, 2024 Order (Dkt. No. 491) at 2)  On November 15, 2024, the parties submitted a joint letter indicating they remained "in disagreement about the appropriate restitution [amount]."  (Nov. 15, 2024 Joint Ltr. (Dkt. No. 498) at 1)  Defendant argued that he had paid most of the amount owed to the IRS, and that only $5,566 was outstanding.  (Id. at 2)  The Government contended that Defendant owed the IRS $76,127, reflecting the "tax losses for tax years 2016 through 2019, less the payment the defendant has made for tax year 2019."  (Id.)

In a December 6, 2024 order, this Court directed the parties to make supplemental submissions regarding the amount of restitution owed to the IRS.  (Dec. 6, 2024 Order (Dkt. No. 505))  In a December 13, 2024 joint letter, the parties "agree that the amount of restitution that the defendant owes the IRS is $76,127.00."  (Dec. 13, 2024 Joint Ltr. (Dkt. No. 507) at 1)

## DISCUSSION

### I.    LEGAL STANDARDS

#### A.    Restitution Under the Mandatory Victims Restitution Act

The Mandatory Victims Restitution Act (the "MVRA") provides that when sentencing a defendant for an offense "in which an identifiable victim or victims has suffered a . . . pecuniary loss," the court "shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense."  18 U.S.C. §§ 3663A(a)(1), 3663A(c)(1)(B).  The MVRA defines "victim" to include "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern

of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." Id. § 3663A(a)(2). "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." Id. § 3664(f)(1)(A).

"The 'primary and overarching' goal of the MVRA is 'to make victims of crime whole, to fully compensate these victims for their losses[,] and to restore these victims to their original state of well-being.'" United States v. Qurashi, 634 F.3d 699, 703 (2d Cir. 2011) (quoting United States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006)). "To fulfill this objective without 'award[ing] the victim a windfall, i.e., more in restitution than he actually lost,' the MVRA caps the restitution award at the actual 'amount of the victim's loss.'" United States v. Thompson, 792 F.3d 273, 277 (2d Cir. 2015) (quoting Boccagna, 450 F.3d at 117). A victim's "actual" loss "equals 'the greater of . . . the value of the property on the date of the damage, loss, or destruction; or . . . the value of the property on the date of sentencing, less . . . the value (as of the date the property is returned) of any part of the property that is returned.'" Id. (quoting 18 U.S.C. § 3663A(b)(1)(B)).

"Calculation of these losses need not be mathematically precise." United States v. Rivernider, 828 F.3d 91, 115 (2d Cir. 2016) (citation and quotation marks omitted). "[A] reasonable approximation will suffice, especially in cases in which an exact dollar amount is inherently incalculable." United States v. Gushlak, 728 F.3d 184, 196 (2d Cir. 2013) (citation and quotation marks omitted).

**B.    The Fraudulent Incorporation Theory of Healthcare Fraud**

The Government seeks an order awarding restitution to Farmers in the amount of $334,612.22. This request is premised on Defendant Weiner's guilty plea to conspiracy to

10

commit healthcare fraud.  (Sept. 30 2024 Govt. Ltr. (Dkt. No. 475) at 1-2)  As discussed above, the Government has argued in this case that under New York's no-fault insurance law, medical clinics under the control of non-physicians are not entitled to reimbursement from insurers for the care they provide, even where that care was medically necessary.

This Court summarized the history and basis for the Government's "fraudulent incorporation" theory in United States v. Israilov, No. 22 CR. 20 (PGG), 2024 WL 3888773, at *1 (S.D.N.Y. Aug. 20, 2024):

> As this Court explained [in United States v. Pierre, No. 22 CR. 19 (PGG), 2023 WL 4493511 (S.D.N.Y. July 12, 2023)],
>
>> [i]n 1973, the [New York] Legislature enacted the Comprehensive Automobile Insurance Reparations Act, which supplanted common-law tort actions for most victims of automobile accidents with a system of no-fault insurance.  Under the no-fault system, payments of benefits "shall be made as the loss is incurred."  N.Y. Ins. Law 5106(a).  The primary aims of this new system were to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts, and to provide substantial premium savings to New York motorists.
>
> Id. at *3 (quoting Med. Society of State of New York v. Serio, 100 N.Y.2d 854, 860 (2003)).  After enactment of the no-fault insurance law, the New York Superintendent of Insurance issued anti-fraud regulations stating that "medical expenses incurred at medical clinics that are owned or operated by non-physicians are not considered 'medical expenses' or 'basic economic loss' within the meaning of the New York Insurance Law, and are thus outside the scope of no-fault insurance policies."  Pierre, 2023 WL 4493511, at *5.
>
> In State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313 (2005), the New York Court of Appeals upheld the New York Superintendent of Insurance's anti-fraud regulations and ruled that "fraudulently incorporated medical compan[ies]" – i.e., "companies [that] fail to meet the applicable state licensing requirements, which prohibit nonphysicians from owning or controlling medical service corporations" – are "not entitled to reimbursement" under New York's no-fault insurance law, even for claims that reflect "appropriate care from a health professional qualified to give that care."  Id. at 320-21.  As this Court observed in Pierre, "Mallela . . . teaches that where a medical clinic misrepresents to an insurer that it is owned or controlled by a physician in order to obtain payment for medical services, the clinic defrauds the insurer."  Pierre, 2023 WL 4493511, at *7.

Since <u>Mallela</u>, courts in this Circuit have consistently acknowledged that the "fraudulent incorporation" theory utilized by the Government here provides a basis for a healthcare fraud conviction under 18 U.S.C. § 1347.  In <u>United States v. Zemlyansky</u>, 945 F. Supp. 2d 438 (S.D.N.Y. 2013), for example, Judge Oetken denied a motion to dismiss where the Government's healthcare fraud charges were premised on a fraudulent incorporation theory.  In so ruling, Judge Oetken reasoned that

> [a] misstatement about a [medical clinic's] ownership, if made with the intent to deceive the insurer into making payment it would otherwise withhold, is a misstatement made with the intent to cause injury to the insurer.  Whether properly characterized as a "windfall" or not, the insurer's entitlement to withhold reimbursement in these circumstances is an interest in money or property, the deprivation of which can be an injury under the fraud statutes. . . .

> The fact that <u>Mallela</u> was a civil case is simply beside the point, as New York law, as construed by the New York Court of Appeals in <u>Mallela</u>, does not create the substantive federal offenses at issue.  Rather, the Court here looks to New York law simply to determine whether a material misrepresentation has been made and whether it was made with the intent to defraud.  On those issues, <u>Mallela</u> is crystal clear.

<u>Id.</u> at 448-49.

Zemlyansky's co-defendant, physician Tatyana Gabinskaya, was subsequently convicted at trial of healthcare fraud and conspiracy to commit healthcare fraud.  On appeal, the Second Circuit found the evidence sufficient to sustain her convictions:

> The evidence adduced at trial was sufficient for a rational jury to find Gabinskaya's knowing and willful participation in the scheme as the straw owner of [the] Clearview [medical clinic].  As discussed above, Gabinskaya signed the necessary paperwork in order for her coconspirators to open and operate Clearview, but did not exercise any control over its operations, or participate in its business or medical decisions.  Gabinskaya did not see patients or supervise employees.  Rather, the clinic was controlled and operated solely by [non-physicians] Zemlyansky and Danilovich.  Nor did Gabinskaya fund Clearview's operations or share in the profits or the risk of loss, instead receiving a fixed payment of $1,500 per week.

> Gabinskaya's knowledge of the fraudulent nature of the scheme was also sufficiently proved.  Most tellingly, Gabinskaya falsely testified during [an examination under oath conducted by an insurance company] that she worked at the clinic two to three times per week, supervised employees, and interviewed patients, including Adelaida Martinez, testimony which

was directly contradicted by other evidence admitted at trial. Such false testimony permits a reasonable jury to infer consciousness of wrongdoing. Gabinskaya's perjurious statements were all designed to portray Gabinskaya as involved in or controlling Clearview's operations, as is necessary under New York State law. The jury was entitled to conclude from Gabinskaya's false testimony during the [examination under oath], along with the totality of the evidence, that Gabinskaya understood that, in order for Clearview lawfully to submit no-fault insurance claims, she, as a licensed physician, had to be not merely its paper owner but rather its actual owner, and that she knowingly participated in the fraudulent scheme with the intent to further its aims by misrepresenting her role at Clearview. Gabinskaya's challenge to the sufficiency of the evidence therefore fails.

United States v. Gabinskaya, 829 F.3d 127, 132 (2d Cir. 2016).

Likewise in Pierre, this Court rejected a motion to dismiss filed by Israilov and several of his co-defendants, in which they argued that federal healthcare fraud charges could not be premised on a fraudulent incorporation theory. This Court observed that,

> [w]hile this case arises in the statutory context of New York's no-fault insurance law, it presents straightforward allegations of insurance fraud – i.e., intentional misrepresentations to insurers about whether claims are for covered loss, in order to obtain payments that would otherwise be denied. The Indictments thus adequately allege "a scheme or artifice to defraud a[ ] health care benefit program, or to obtain by means of false or fraudulent pretenses, representations, or promises, . . . money or property owned by, or under the custody or control of, a[ ] health care benefit program." 18 U.S.C. § 1347(a) (formatting altered).

Pierre, 2023 WL 4493511, at *11.

Under this precedent, the corrupt medical clinics under the control of Israilov and his non-physician co-defendants were not entitled to reimbursement from insurers for any medical care or treatment they rendered to accident victims. Accordingly, the insurers that paid such reimbursement to these corrupt medical clinics may seek restitution for the amounts they paid.

Israilov, 2024 WL 3888773, at *4-6.

## II.    ANALYSIS

### A.    Whether Restitution is Appropriate as to Farmers Insurance Exchange

Farmers has submitted a letter documenting $334,612.22 in payments it made to Nexray, Dr. Weiner's MRI facility.  (Sept. 30, 2024 Farmers Ltr. (Dkt. No. 475-1) at 1-3) Weiner does not dispute that Farmers made the payments that it says it made.

Weiner argues, however, that because "the Government no longer contends that there was a Mallela violation that otherwise would have allowed the insurer to legally deny payment[,]" Farmers "was obligated to pay Dr. Weiner for the claims submitted [by Nexray]." (Oct. 10, 2024 Def. Ltr. (Dkt. No. 480) at 2)  Weiner also argues that "neither the Government nor the insurance company point to any losses caused by Dr. Weiner's false statements during Examinations Under Oath" – i.e., the perjury that Weiner admitted to during his plea allocution (see Jan. 16, 2024 Plea Tr. (Dkt. No. 385) at 19-21) – and that "[t]hey do not attempt to identify any false statement that may or may not have impacted the insurance companies['] decisions to pay claims submitted by Dr. Weiner." (Id. at 2)  Citing case law stating that "'[i]n health care-fraud cases, an insurer's actual loss for restitution purposes must not include any amount that the insurer would have paid had the defendant not committed the fraud[,]'" Weiner contends that there is no factual or legal basis for a restitution award to Farmers.  (Id. at 1) (quoting United States v. Mahmood, 820 F.3d 177, 196 (5th Cir. 2016) (first bracket in original) (emphasis in original))

As noted above, the Government has not responded to Defendant's argument. Instead, the Government merely refers the Court to an October 22, 2024 letter filed by Mid-Century Insurance Company – one of the Farmers entities that made payments to Nexray.  In its letter, Mid-Century notes that "Weiner pleaded guilty to making false statements [at examinations under oath] regarding the involvement of layperson Bradley Pierre in the operation

14

and management of Nexray," and asserts that "Weiner's false testimony directly resulted in

Farmers making $334,612.22 in payments that would have been properly denied." (Oct. 22,

2024 Mid-Century Ltr. (Dkt. No. 487) at 4-5) Mid-Century argues that, given these

circumstances, "it is appropriate that Weiner should be ordered to make restitution to Farmers as

a result of the false statements." (Id. at 2)

   While Weiner admitted during his allocution that he "falsely minimized Bradley

Pierre's role in [his] medical practice [at examinations under oath conducted by insurers, and that

he did so in order] to facilitate the payment of claims" (Jan. 16, 2024 Plea Tr. (Dkt. No. 385) at

19), the Government has stated that it "does not contend for sentencing purposes that the

defendant committed a substantive Mallela violation." (Aug. 9, 2024 Govt. Ltr. (Dkt. No. 452)

at 3) In other words, the Government's position is that while Weiner's plea allocution

establishes that he is guilty of "healthcare fraud conspiracy," the Government no longer contends

that he committed a "substantive" healthcare fraud crime premised on a "Mallela violation."

(Sept. 17, 2024 Joint Ltr. (Dkt. No. 468) at 1-2) Absent a "substantive" healthcare fraud crime,

however, Farmers suffered no loss for which it is entitled to restitution.

   This Court explained at Weiner's September 19, 2024 sentencing the significance

of the Government's abandonment of its claim that Weiner had committed a substantive

healthcare fraud offense premised on a Mallela violation:

> [T]he parties say that Dr. Weiner's plea allocution provides a sufficient factual
> basis for concluding that he conspired to commit healthcare fraud, even though
> the government has abandoned any attempt to prove a substantive Mallela
> violation. . . . While I will accept the parties' factual stipulations, . . . drawing a
> distinction between a conspiratorial versus a substantive violation on the facts of
> this case makes absolutely no sense. Under the theory the government pursued
> for two and a half years[,] Dr. Weiner would have violated Mallela, and therefore
> committed a substantive healthcare fraud violation[,] [e]very time a claim was
> filed for care provided at his MRI clinic[,] because that clinic was controlled and
> operated by a nonphysician. The parties have stipulated, however, that Dr.

> Weiner had merely an unlawful agreement with Bradley Pierre to file claims in violation of <u>Mallela</u>, but that the object of that unlawful conspiracy was never actually consummated.  That makes no sense under the facts of this case, but it is part and parcel of the erosion of the government's case as this prosecution has proceeded over the past two and a half years.

(Sept. 19, 2024 Sent. Tr. (Dkt. No. 478) at 6-7) (citations omitted)

In sum, in order to avoid a <u>Fatico</u> hearing, the Government agreed to drop its claim that Weiner had committed a substantive <u>Mallela</u> violation.  As this Court noted at sentencing, as a result of the Government's concession, the parties had in effect stipulated that "the object of [Weiner's] unlawful conspiracy was never actually consummated."  (<u>Id.</u> at 7)  In other words, the Government agreed not to assert at sentencing that Weiner had caused Nexray to submit claims to insurers for reimbursement while Nexray was under the control of a non-physician.

Given the Government's concession, there is no factual or legal basis for this Court to impose an order of restitution on Weiner with respect to Farmers or any other insurer.[2]  Accordingly, no restitution order will be entered as to Farmers.

**B.    <u>Restitution to the IRS</u>**

The parties "agree that the amount of restitution that the defendant owes the IRS is $76,127.00." (Dec. 13, 2024 Joint Ltr. (Dkt. No. 507) at 1)  Accordingly, this Court will enter an order of restitution against Weiner and in favor of the IRS in the amount of $76,127.

---

[2]  This conclusion presents no conflict with Weiner's plea agreement, which provides only that Weiner "agrees to make restitution in an amount ordered by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, at 3664."  The plea agreement does not require Weiner to make restitution in any particular amount to any particular victim.  (Weiner Plea Agmt. at 2)

## <u>CONCLUSION</u>

For the reasons stated above, this Court will enter an order of restitution against

Defendant Weiner and in favor of the IRS in the amount of $76,127.  The Government's

application for an order of restitution as to Farmers Insurance Exchange is denied.

Dated: New York, New York
      December 18, 2024

                    SO ORDERED.

                    Paul G. Gardephe
                    United States District Judge